UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-315-H

MIGLIORE & ASSOCIATES, LLC
AND
LISA MIGLIORE BLACK                                                             PLAINTIFFS

V.

KENTUCKIANA REPORTERS, LLC                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Migliore & Associates, LLC ("Migliore & Associates") and Lisa Migliore Black (together "Plaintiffs") bring this action against competitor Kentuckiana Reporters, LLC ("Kentuckiana") alleging violations of the Lanham Act (15 U.S.C. § 1125(a)), the Anticybersquatting Consumer Protection Act ("ACPA," 15 U.S.C. § 1125(d)), and Kentucky common law banning unfair competition practices.

Defendant has moved to dismiss each of Plaintiffs' three claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendant also moves to dismiss Lisa Migliore Black in her personal capacity as an improper plaintiff. Plaintiffs object to the motion to dismiss and cross-motion to amend the complaint, in part to correct for some of the inadequacies highlighted in Defendant's arguments. The Court addresses each request in turn after a brief overview of the underlying facts.

## I.

Lisa Migliore began working as a court reporter in the greater Louisville area in 1997. In 2001, Migliore established the Kentucky LLC "Migliore & Associates," conducting business as its sole member. In 2009, Migliore married. Because of the name recognition and goodwill her maiden name had accrued in the community, she chose to retain "Migliore" as part of her married name and did not alter the name of the business.

In August 2011, Kentuckiana Reporters, a Louisville-based competitor, registered the domain name "lisamigliore.com" with GoDaddy.com, LLC. At some point after registration, Defendant directly linked "lisamigliore.com" to its own website, rerouting any web traffic to itself. Following a letter from Plaintiffs' counsel dated June 19, 2012, Kentuckiana discontinued the re-direction to its own website, but refused to transfer the domain name to Plaintiffs.

In August 2012, Plaintiffs proceeded under the Uniform Dispute Resolution Policy and filed a complaint with an arbitral panel of the World Intellectual Property Organization Arbitration and Media Center ("WIPO"). Defendant participated in this action, maintaining that it had registered the disputed domain name for possible use as a "gripe site" for criticism of Plaintiffs or as a "fact check site" regarding Plaintiffs' public statements (WIPO decision, p.3). The WIPO Arbitrator assigned to the case ultimately concluded that Defendant acted in bad faith in its registration and use of the domain name and ordered the transfer of the domain name to the Plaintiffs. After Defendant refused to reimburse Plaintiffs for costs associated with the WIPO dispute, Plaintiffs filed the instant action in federal court.[1]

---

[1] Plaintiffs have not waived their right to file an action in this Court by previously proceeding under the UDRP and having their claim heard by an arbitral panel of WIPO. As other district courts and the Fourth Circuit have held, arbitrating a dispute pursuant to UDRP does not preclude a plaintiff from filing a civil suit, either before or after the arbitral proceeding. *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 624-25 (4th Cir. 2003) ("Because the administrative process prescribed by the UDRP is 'adjudication lite' as a result of its streamlined nature and loose rules regarding applicable law, the UDRP itself contemplates judicial intervention,

II.

Kentuckiana moves to dismiss each of Plaintiffs' three claims under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citation omitted). When reviewing Kentuckiana's motion, the Court will construe the complaint liberally and in the light most favorable to Plaintiffs, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences from those allegations in favor of the non-moving party. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2009); *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

III.

First, Defendant urges the Court to dismiss Count I (cyberpiracy under the ACPA, 15 U.S.C. §1125(d)) and Count II (false designation of origin and false advertising under §43(a), codified at 15 U.S.C. 1125(a)) because "actual damages are required to sustain a cause of action under the Lanham Act" and "plaintiffs failed to sufficiently plead that they were damaged by Kentuckiana's alleged conduct." (MTD, Dock. No. 12-1, p.3-4). Though Kentuckiana levies the same attack against both Counts I and II, and though the same facts form the basis for each claim, the elements that comprise the claims are distinct, hence the Court will address Kentuckiana's attack on each claim separately.

---

which can occur before, during, or after the UDRP's dispute-resolution process is invoked"); *see also Paris v. Netlearning, Inc.*, 139 F.Supp.2d 745, 751 (E.D.Va. 2001). As discussed at length in §II.A below, ACPA claims offer more remedies than the cancellation or transfer of a domain name—the only remedies available under UDRP proceedings.

A.

To establish a claim of cyberpiracy under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) a plaintiff must show that a defendant registered, trafficked in, or used in bad faith a domain name that incorporates a famous or distinctive mark, including a personal name, if that mark was famous or distinctive at the time of registration. The facts alleged in the complaint, taken as true, satisfy each of the statutory requirements to render the claim to relief "plausible on its face." *Iqbal*, 556 U.S. at 678 (internal references omitted). Defendant complains that "plaintiffs failed to sufficiently plead that they were damaged by Kentuckiana's alleged conduct and, therefore, fail to state a cause of action under Count[] I…of their complaint." (MTD, Dock. No. 12-1, p.4). This argument fails for the multiple reasons.

First, proof of damages is not part of the prima facie case for cyberpiracy. Section 1125(d) of 15 U.S.C. lays out the elements of the offense of cyberpiracy, while two separate sections of the Lanham Act, 15 U.S.C. § 1117(a) and § 1117(d), detail the array of remedies available to successful cyberpiracy claimants. Section 1117(a) allows a successful plaintiff to recover—subject to principles of equity—"(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." In "exceptional cases," attorney's fees are available as well.

As an alternative to recovery under § 1117(a), § 1117(d) provides for the election of statutory damages in cyberpiracy actions: "In a case involving a violation of [the ACPA], the plaintiff may elect at *any time* before final judgment is rendered by the trial court to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d) (emphasis added). Thus, to the extent Kentuckiana faults the complaint for

being "silent as to how Kentuckiana's alleged use of the domain name caused any actual harm," the Court points out that no actual damages need be alleged to recover under the ACPA.

Second, the Court is satisfied that the allegations in the complaint do sufficiently link Defendant's actions to injury in order to push Plaintiffs' claim to relief on the cyberpiracy claim from possible to plausible.[2] For instance, Plaintiffs allege that for an unknown period between August 2011 and June 2012, Kentuckiana used the disputed domain name to directly link any visitors to "lisamigliore.com" to Kentuckiana's own website. DN 1, ¶ 23. This extended period and type of use (together with the fact that registering a domain name with GoDaddy.com LLC is not free[3] and the fact that Kentuckiana allegedly engaged in a pattern of like behavior, registering and putting to identical use domain names that incorporated three other competitors' names or slight misspelling thereof, *see* DN 1, ¶ 33-36) raises the natural inference that Kentuckiana's registration and use of the "lisamigliore.com" domain name was intended to make a profit.

From the time and manner of use that Kentuckiana put the contested domain name, it is at least "plausible" that Kentuckiana profited from its efforts, comprising injury to Plaintiff and representing but one category of damages[4] Plaintiffs would be able to recover if they are successful on the merits of their cyberpiracy claim. Plaintiffs' inability to verify whether and to what extent Kentuckiana profited from its actions or how many—if any—customers were

---

[2] Because of this, the Court refrains from assessing Plaintiffs' argument in their Memorandum in Opposition to Defendant's Motion to Dismiss that they could have relied on the statutory damages provision of the ACPA without pleading actual damages (DN 13, p.3) and Defendant's counter position that Plaintiffs are not entitled to an award of statutory damages in the absence of a basis for them (DN 15, p.6). Plaintiff's prayer for relief indicates that each Plaintiff has already elected to seek the maximum statutory amount available per domain name, but their claim could have moved forward in spite of the existence of § 1117(d) statutory damages for cyberpiracy violations.

[3] Federal Rule of Evidence 201 allows judicial notice of a fact "not subject to reasonable dispute because it….can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b)(2). The court may take judicial notice on its own at any stage of the proceeding. FRE 201(c)-(d).

[4] If Plaintiffs successfully make out a violation of the cyberpiracy, they will also be entitled to costs of the present action under 1117(a).

diverted is immaterial at this early stage of litigation. Plaintiffs have met their burden of pleading factual content that allows the Court to draw the reasonable inference that defendant is liable for the misconduct alleged, allowing Plaintiffs' cyberpiracy claim to survive Kentuckiana's motion to dismiss. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).[5]

Bolstering this conclusion, although judicial review of a WIPO decision is *de novo*,[6] the WIPO arbitrator's decision helps demonstrate that Plaintiffs' cyberpiracy claim meets the plausibility standard for pleading. *See Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) ("Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probable' entitlement to relief.") (citations omitted). Indeed, the WIPO arbitrator made specific findings after hearing each side's arguments and evidence that Kentuckiana's registration and use of the contested domain name was in bad faith. Plaintiffs incorporate the WIPO decision into their complaint. DN 1, ¶ 38-43.

Kentuckiana's motion to dismiss Plaintiffs' ACPA claim is denied.

B.

Plaintiffs next make a claim for false designation of origin and false advertising based upon § 43(a) of the Lanham Act. The pertinent part of that statute provides:

> (1) any person who, … in connection with any goods or services,…uses in commerce any word, term, name, symbol, or device, or any combination thereof,

---

[5] In their Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiffs attempt to construe the costs of the WIPO action they engaged in as actual damages. DN 13, p.6 (referencing DN 1, ¶ 39, 46). As Kentuckiana points out, DN 15, p.5, Plaintiffs chose to pursue arbitration when the same type of injunctive relief—namely, an order to transfer the domain name—could have been afforded in a solitary civil action in federal court. *See* 15 U.S.C. § 1125(d)(1)(C). The expense of the WIPO action will not be included with any actual damages Plaintiffs prove in the immediate action. This result is mandated by the plain language of the statutory provision detailing the remedy for a violation of 1125(a): "[plaintiff shall be entitled to recover] (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) *the costs of the action*." 15 U.S.C. § 1117(a). This language contemplates a consolidated action in a federal court where there is authority, in the face of an ACPA violation, to order transfer of domain name(s) (1125(d)(1)(C)), grant injunctions (1116(a)), and/or provide recovery of actual damages (1117(a)) or statutory damages (1117(d)). Still, contrary to Defendant's assertions, DN 15, p.5, actual damages are not a "requisite" for Plaintiff's cyberpiracy claim to proceed.

[6] *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F.Supp.2d 612, 617 (E.D.Va. 2002).

or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which – (A) is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Defendant attacks Count II in the same way it faults Count I, lamenting that Plaintiffs provide no more than "mere labels and conclusions" to describe how Defendant's alleged use of the domain name caused any actual harm cognizable under the Lanham Act. ECF DN 12-1 at p. 6-7. Defendant contends that Plaintiff inadequately alleges that Defendant's actions produced actual confusion or that consumers were successfully misled by Defendant's actions. *Id*. This argument fails at this stage of litigation. On a motion to dismiss, the court simply tests whether the complaint contains "direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Hunter v. Sec'y of the U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Advocacy Org. for Patients and Providers v. Auto Club. Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999)).

Here, Plaintiffs have alleged common law rights in the name "Lisa Migliore" by reason of use of this name, standing alone and as "Migliore and Associates, LLC" to identify the Plaintiff's business for over a decade. The disputed domain name is identical to Lisa Migliore Black's maiden name minus the generic top-level domain ".com." Plaintiffs never authorized Defendant to use this name and claim that Defendant had no legitimate purpose in its use. For some period of time after registering "lisamigliore.com" in August 2011 until the end of June 2012, Defendant used the domain to automatically redirect visitors to the site of its own webpage, "kentuckianareporters.com." DN 1, ¶ 23. According to Plaintiffs, the intention and

effect of this practice was to mislead consumers into believing that Lisa Migliore worked for, or was somehow affiliated with, Kentuckiana Reporters.

These facts, together with the inferences they raise, are enough to meet the pleading standard and raise a plausible claim to relief on Count II and Kentuckiana's motion to dismiss Plaintiffs' claim under 15 U.S.C. 1125(a) is denied.

IV.

Next, Kentuckiana urges a general standing problem. In their complaint, Plaintiffs make such claims as

> Defendant intentionally attempted to attract for commercial gain Internet users to the Defendant's website or other on-line location by creating a likelihood of confusion with the Plaintiffs' name as to the source, sponsorship, affiliation, or endorsement of the Defendant's website or location of a product or service on the Defendant's website or location.

DN 1, ¶ 51. Kentuckiana argues

> …[T]he Migliore plaintiffs have alleged a purely speculative injury…[t]hey allege only that Kentuckiana **attempted** to attract Internet users from www.lismigliore.com, but fail to allege that the domain name had ever been used for solicitation or advertisement of court reporting services or that any actual traffic or customers were diverted.

DN 12-1, p.9 (emphasis in original). Kentuckiana is correct that Plaintiffs are required to establish an "actual or imminent, not conjectural or hypothetical" injury as one of the "irreducible constitutional minimum[s]" of standing to raise any claim in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560. However, it is also true that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. National Wildlife Federation*, 497 U.S. 871-883-89 (1990). This means that at the pleading stage, "general factual allegations of injury resulting from the defendant's

conduct may suffice." *National Wildlife Federation*, 497 U.S. at 889. As discussed in § II.A above, the fact that Plaintiffs are unable at this time, prior to the performance of any discovery, to pinpoint exactly how much—if any—business Kentuckiana diverted or confusion it caused by its use of the contested domain name is immaterial. At this time, the pertinent inquiry is whether Plaintiffs have alleged adequate facts to enable this Court to find it plausible they suffered injury cognizable under the Lanham Act.

For the reasons discussed in § II.A above, Plaintiffs have met this burden and Defendant's motion to dismiss Plaintiffs' claims on general standing grounds is denied.

V.

Kentuckiana also moves to dismiss the claims of Lisa Migliore Black in her personal capacity. Kentuckiana argues these claims are "duplicative" and should be dismissed according to the authority found in KRS 275.155:

> A member of a limited liability company shall not be a proper party to a proceeding by or against a limited liability company solely by reason of being a member of the limited liability company….

According to Kentuckiana, Lisa Migliore Black may not tack on a personal claim when the allegations seek redress "solely on behalf of Migliore and Associates," as here: "[A]ny actual damages from the diversion were incurred solely by Migliore and Associates, LLC." DN 12-1, p.9.

The Court will not dismiss Lisa Migliore Black's personal claims at this time. As the complaint alleges, DN 1, ¶ 15; *see also* DN 13, p. 8, Lisa Migliore Black has common law rights akin to an unregistered trademark interest in the name "Lisa Migliore."[7] Under both common law

---

[7] *See, e.g.*, Parks v. LaFace Records, 329 F.3d 437, 446-47 (6th Cir. 2003). In *Parks*, the Sixth Circuit held that Rosa Parks, civil rights icon who had international fame and authorized television programs and books, had a property interest in her name akin to that of a person holding a trademark, and thus, had a viable cause of action under the product confusion provision of the Lanham Act against record producer and

9

and federal law, "a trademark is a designation used 'to identify and distinguish' the goods of a person.'" J. Thomas McCarthy, MCCARTHY ON TRADEMARKS, § 3.1 (4th ed. 2004) (quoting 15 U.S.C. § 1127). A trademark need not be registered to be entitled to protection under the ACPA. *See Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209 (2000); *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). Rather, "the general principles qualifying a mark for registration under [the act] are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos,* 505 U.S. at 768. The provision governing registration under the act "requires that registration be granted to any trademark 'by which the goods of the applicant may be distinguished from the goods of others'-subject to various limited exceptions." *Wal-Mart Stores,* 529 U.S. at 211 (quoting 15 U.S.C. § 1052).

Lisa Migliore Black has incorporated the personal name "Lisa Migliore" as all or part of the designation she has used to advertise and promote her business for over 16 years. DN 1, ¶ 11, 15-17. Putting the existence of the LLC plaintiff in the instant case to the side, the language of the Lanham Act contemplates suits brought by plaintiffs in their personal capacities under the right circumstances. Further, neither the language of the Act nor Kentucky unfair competition law poses a bar to two plaintiffs with distinct interests[8] in a mark from both bringing suit against the infringer. While it might be true that actual damages—if any—from Kentuckiana's infringing acts would be incurred by Migliore and Associates, DN 12-1, p. 9, it does not follow that "[t]he

---

musicians who used her name as the title of a song, even though her name might not be eligible for registration as a trademark, and even though the producer and musicians were not selling her brand of compact discs (CDs), if consumers falsely believed the celebrity sponsored or approved the song, or was somehow affiliated with the song or the album. Lanham Trade–Mark Act, § 43(a)(1)(A), 15 U.S.C.A. § 1125(a)(1)(A). In the case at bar, Lisa Migliore Black, the only court reporter in the vicinity who has ever advertised her services under "Lisa Migliore," DN 1, ¶ 15, has alleged, and at this stage in litigation we accept as true, that her identity was invoked and has commercial value and market recognition. Because of her use of her name, Lisa Migliore Black likely could have registered "Lisa Migliore" as a trademark, *see* 15 U.S.C. § 1052, but as discussed in-text above, marks do not have to actually be registered to warrant protection under the Lanham Act provisions Black relies on.

[8] S*ee* DN 13, p.8.

sole connection Lisa Migliore Black has to this litigation is her membership in Migliore and Associates, LLC." DN 12-1, p. 10. Also, as discussed in §§ II.A and II.B above, true "actual damages" are not the only category of compensation Plaintiffs stand to receive if they prevail on the merits of the claims.

For these reasons, Kentuckiana's motion to dismiss the claims Lisa Migliore Black makes in her personal capacity is denied.

VI.

Lastly, Kentuckiana urges the Court to dismiss Plaintiff's Count III, unfair competition, because the complaint references a section of the Kentucky Revised Statutes that deals with the insurance business. DN 1, ¶ 61. Defendant attempts to construe this citation as Plaintiffs' attempt to state a claim under the Kentucky Insurance Code, and points out that none of the factual allegations in the complaint support a cause of action under the Insurance Code.

Upon review, the Court finds that, erroneous statutory pin cite notwithstanding, Plaintiffs clearly demonstrated the intent to state a claim under the broader concept of common law unfair competition which is recognized in a variety of contexts in Kentucky. This is evident by the header used in that section of the complaint: "Count III – Unfair Competition." DN 1, p.11. Assessing the adequacy of the pleading with this reading in mind, we find the totality of the allegations, incorporated into Count III at paragraph 60, meet the pleading standard we use on a motion to dismiss. "The common law doctrine of unfair competition has long been recognized and its coverage…expanded to meet many varying types of business conditions." *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 137 (Ky. 1969). A "species of fraud or deceit," the "universally recognized, and…most common" form of common law unfair competition is "simulation by one person of the name, symbols, or devices employed by a

business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership and thus secure for himself benefits properly belonging to his competitor." *Id.* (quoting 52 Am. Jur. Trade-marks, Trade-names, Etc., section 86, page 564). The same allegations found at § II.A.1-2 herein to be sufficient to meet the plausibility pleading standard on Plaintiffs' Lanham Act claims provide the foundation for Plaintiffs' common law unfair competition claim.

Kentuckiana's motion to dismiss Count III is denied.

## VII.

In response to Kentuckiana's motion to dismiss, Plaintiffs have moved for leave to file their first amended complaint pursuant to Federal Civil Rule 15. In the interests of efficiency and expediency, the Court will address Plaintiffs' motion herein. Because Plaintiffs motioned to amend their complaint more than twenty-one days after Kentuckiana's 12(b)(6) motion, Rule 15(a)(2) applies and Plaintiffs may only amend with Kentuckiana's written consent or this Court's leave. The rule directs that the "court should feely give leave when justice so requires." *Id.* The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

To summarize the requested amendments, Plaintiffs seek to redact an accidental reference to Kentucky's insurance code in their unfair competition claim based on Kentucky common law, add punitive damages to their prayer for relief, and add clarification to their damages requests. DN 16.

At this early date in the present litigation, none of Plaintiff's requested amendments "unduly prejudice" Kentuckiana, nor is there evidence of bad faith or a dilatory motive on the

part of the Plaintiffs. First, it should already have been clear to Defendant, both from the generic heading "Count III – Unfair Competition," DN 1, p. 11, and from the absence of any mention or relevance of the insurance industry to the underlying facts, that Plaintiffs' citation to KRS § 304.12-010 in the Complaint was likely accidental. Second, that Plaintiffs now seek to add a punitive damages claim cannot plausibly be characterized as a surprise to Kentuckiana, given the WIPO Arbitrator's finding (which we will review *de novo*) that Defendant registered and used the domain name in bad faith.

As to the punitive damages claim Plaintiffs seek to add, Defendant argues "Each decision made by Kentuckiana in this litigation has been based upon the scope of the action as represented by the Migliore Plaintiffs in their original complaint. Kentuckiana may have taken any number of different directions in the litigation had it known of the expanded scope of this action." DN 17, p.1-2. This argument does not demonstrate undue prejudice; this suit is still in its earliest stages and Defendant has an array of options before it. Further, the Court has considered Defendant's argument that the addition of punitive damages is not based on any "new" information. DN 17, p.1. Plaintiffs do recite evidence to support their punitive claim they aver was discovered in preparation for trial discovery, but do not claim they did not have access to this information before drafting the initial complaint. DN 16. Still, on balance, the Court finds no bad faith on the part of Plaintiffs and do not find that the addition of punitive damages will unduly prejudice the Defendant or "radically" expand the scope of this litigation.

Finally, as discussed at length in § II herein, the Court does not agree with Defendant's assessment of Plaintiffs' original complaint as being inadequately pleaded. With this in mind, we

find no reason to deny Plaintiffs the opportunity to make the slight clarifications[9] they propose to make to their trademark infringement and unfair competition claims.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend the complaint is SUSTAINED.

cc: Counsel of Record

---

[9] For instance, Plaintiffs already make the following allegation in their original complaint regarding their ACPA claim: "Defendant intentionally attempted to attract for commercial gain Internet users to the Defendant's website or other on-line location by creating a likelihood of confusion with the Plaintiffs' name as to the source, sponsorship, affiliation, or endorsement of the Defendant's website or location of a product or service on the Defendant's website or location. Defendant has no interest and should not benefit from the Domain Name." DN 1, ¶ 50. In their amended complaint, Plaintiffs seek to add the following paragraph immediately after the one just described: "Defendant did, in fact, divert and redirect consumers who typed in the disputed Domain Name to Defendant's own website while the Domain name was actively linked to the Kentuckiana website."